Chief Justice Bibb
delivered the Opinion of the Court.
In 1794, John Garnett purchased of Abr Chapline, the attorney of Edmund Rogers, two thousand acres of land, at the price of four hundred pounds, and took an obligation for convey any from Rogers: Garnett to make his choice of any of Rogers' survey on certain waters, but to take the whole of a tract or tracts, and in case of a residue, to take the, necessary quantity for the compliment of 2000, off either side or end of one other of his surveys.
Garnett elected to take the whole of a tract of 1,206 2 3 acres, and the residue adjoining, out of a contiguous survey of 1,750 acres. When Garnett made known his election to Rogers, he was informed that the survey of 1,206 2 3 acres was conflicted with by a survey of Pugh Price, to the extent of one hundred acres, or a little upwards. Rogers ami Garnett met upon the lands to abut and bound the 2.000 acres to be conveyed about the year 1799$ and that meeting resulted in a deed of 1800. January, for the consideration of £400 expressed, with the following description:
—"Containing by survey. 2 000 acres. Beginning a three Beeches, corner to the two surveys, Fast with a line of the 1,750 acres, two hundred *270 and twenty-six poles to a Sagar tree and two Dogwoods; thence South, six hundred poles, to a stake in the south line of said survey; theme West, with said line and a line of the 1.206 2-3 acres survey, 548 poles to an Ash and two Sugar trees in a hollow; thence North with another line of said survey, to a line of laugh Price's 1,333 1-3 acres survey; thence with his line N. 80 E. to his corner, a white Walnut, Beech and Sugar tree; thence, with another of said lines, N. 10 W. to a line of the 1,206 2 3 acres survey thence with said line East, to the beginning.”
Garnett’s possession and sales to others.
Allegations of Rogers’ bill for the surplus land, or compensation for it.
Answer of Garnett.
Garnett took possession under this deed; settled on the land himself and settled others on it, selling out along the division line which extends across the 1,750 acres..
In October 1818, Rogers exhibited his hill against Garnett, alleging, that the deed was executed by him with design of complying with the contract made by his agent, Chapline, and no other; that only 2.000 acres were sold, at four shillings per acre; no more paid for; — “that in making the deed and running off the land, he has, through err r or mistake, conveyed to said defendant, about three hundred acres of land more than he was entitled to, under the contract made with said Chapline ” The prayer is, to have the surplus laid off along the line run through the tract of 1,750 acres, and reconveyed to him, but if Garnett can not reconvey that land, then for compensation at its present value,
Garnett, denies error or mistake; and states that he proposed to loose half the interference of Price’s survey, stated to be at one hundred acres or a little upwards, if Rogers would let him have the land at the computation, by the original surveys and distances, to which Rogers agreed: that upon that bases, a calculation was made of the distance necessary to be. run upon the line of the 1,750 acres, to-give the quantity by a line across, parallel to the line which was the common boundary between the two surveys. That Rogers van two hundred and twenty-six poles, then advanced a few poles farther, in allowance for *271 good measure, and marked the corner, two Dogwoods and a Sugar tree; and then ran South across, to strike the southern boundary; that the deed was made, in pursuance of this adjustment on the ground.
Decree of the circuit court.
If, in executing a contract for a certain quantity of land, an extraordinary surplus is conveyed by mistake, the vendor may have relief, if he applies in time-Query, as to the general rule for the relief in such cases.
The question to be discussed.
An equity may be rebutted by parol proof.
The circuit Judge dismissed the bill with costs; from which, Rogers has appealed.
That Garnett bought of Chapline, the agent, but 2,000 acres, and paid £400 only, is agreed between the parties. Whether that contract was by the acre, at four shillings, as alleged, or in gross, £400 for 2,000 acres, is immaterial, since Garnett bought no defined boundary, but was to make his selection, and then the boundary to he accommodated to the quantity and other details of the agreement.
Without doubt, if in carrying into execution a contract for a certain number of acres.at a defined price, the vendor conveys, and the vendee acquires title to an excess so large as not to be accounted for by usual variation of instruments and ordinary difference, and imperfection of operators, so that the intent of the parties has been frustrated by mere error and mistake, the vendor, applying in due time after the mistake is discovered, and in reasonable time after the error committed, would be entitled to redress in a court of equity. But whether that re dress would be by reconveyance of the surplus, or by compensation at the contract price, or at the pro-sent value, would depend upon circumstances, We do not find ourselves under the necessity to deride what should be the general rule of relief in such cases.
The question is, whether this deed is the consequence of error or mistake, as to the surplus of 280 acres, or is according to the. intent of the parties, under an adjustment and modification in the execution of the old agreement.
When the parties met upon the lands with a view to the execution of their agreement, they were as competent to obviate any difficulties or inconveniences which arose, by a new agreement, or modification of their former agreement, as they were to ex- *272 brute the. letter of the old contract.. The execution of the contract about which they met on the lands, required an assent of both parties, as to the mode of taking and defining the 2,000 acres. To fix and adjust the boundaries to be expressed in the deed by mutual agreement and assent, was the design of thier meeting. The complainant is seeking relief against his deed, upon an equity alleged. The defendant is seeking tin relief, no aid, no specific execution. but to rebut an equity claimed, he relies upon another agreement, not executory, but executed. If such new agreement was made, and executed by the parties by solemn art and need, it is no objection now, that the agreement insisted on, was by parol in its commencement. An equity may he. rebutted by parol proof. So are the cases of Walker vs Walker, 2 Atk. 99, and Joynes vs Statham, 3 Atk. 389. When a verbal agreement has been executed hy deed, it ceases to he a mere verb d agreement; that parol agreement, is merged in the deed. It would be hard if every deed made in pursuance of an agreement, was to be set aside, because the parties bad not first reduced their agreement to writing in the shape, of an executory Contract, to lay a foundation to support. the deed. But this case does not rest upon mere parol evidence, to support the agreement insisted on by the defendant: it is demonstrable from the facts agreed in the bill and answer, the title papers of Rogers, the surveyor’s report and the deed.
Statement of the facts by reference to the diagram.
The annexed diagram will explain the facts more clearly and succinctly than could be done by writing, without a view of the figures of the two surveys, as they actually are, and as they would seem to be, from the title papers. (See plate no. 2, at the end of the volume.)
The bill and answer both agree* that only the line of 229 poles, from the corner common to the two surveys in their northern, boundary, eastwardly along the line of the 1,759 acres, to the. made corner, sugar tree and two dogwoods, (10 to 11,) was measured; that from thence the line across, south, (but now it appears not south, from 10 to 12,) was run and marked as far as they went, but not *273 measured, and this south line was run across from the northern boundary with a view of striking the southern boundary. The. bill states that this south line was marked by David Allee. lie says the same, and that they did not reach the southern boundary* or did not find if, and quit the surveying, He states also, that the the from the three beeches to the two dogwoods and sugar tree, 228 poles, (from 10 to 11,) was the only ad-measurement; the line thence south was not measured, but run and marked.
Farther statement by reference to the exhibits, surveyor’s reports and evidence.
The deed itself, compared with the surveyor’s report and certificates of the two surveys, shows clearly, that except this line of 226 poles, so measured, all other distances, corners and courses, where taken from the original surveys, and not by re-survey. If the parties had run and measured the hues, they would have discovered the excess of distances, above those named in the original certificates of survey; that the surveys were not rectangular p-parallelograms, as they purported to be by the original surveys; and would have discovered that the southern boundary of the 1,206 2 3 acres, was not a right line, as it purported to be; that the beginning calk'd for, as standing in a right, line East and West, between the second and fourth corners, was not so in fact, but that this survey was an irregular pentagons as marked upon the ground, instead of a regular four sided figure, with right angles, and two lines of six hundred poles each, and two of three hundred and twenty-two poles each. The deed calls for as take in the south line of the survey of 1.750 acres; thence west with said line and a line of the 1,206 2-3 . acres, 548 poles to an ash and two sugar trees in a hollow; being the course of the Hue according to the patents, regardless of the fact that the'ash and two sugar times in a hollow, as called for in the patent, did not stand in that course, but-greatly to the itorth. The deed moreover, in this part discloses the facts, that having run 226- poles upon the northern boundary to the sugar tree and two dogwoods, (the corner then made,') and from thence a south course to strike the southern boundary of the 1,750 acres, the *274 calculation was, that this intersection would also be poles distant From the corner common to the surveys on their southern boundary: although had they measured, they would have found that it was not so in fact — the line 2-12 is but 160 poles by the surveyor’s report. The distance of six hundred poles on this south line, was taken from the patent distance, and the course was also for a line parallel to the line dividing the surveys of 1,750 and 1,206 2-3 acres, as called for in the patents. The next, distance in the deed, 548 poles, was obtained by adding the 226 poles, measured on the northern boundary, (10-11,) to the patent distance of 322 poles, called for in the patent of the 1,206 2-3 acres. The call fora stake in that line, thence west with it to the marked corner, shows it was an intersection by calculation, and not by actual running and marking; it means so in the dialect of surveyors, it was so in truth and in fact.
Testimony of the witness.
Beyond all doubt it is true, by the concurrent testimony of David Allee, (the only one of the witnesses who was with the. parties on the ground, who has been examined,) by the title papers, surveyor’s report, deed, bill and answer, that only the line of 226 poles, (10-11) was measured, only one corner made, and part of another line marked, but not measured, and all other facts referred to in the deed were collected from the certificates of the original surveys.
David Allee deposes, that be met. the parties near the north west corner of the original survey of 1,206 2-3 acres; they had not agreed as to the mode of running off the land; surplus was mentioned, but what were the particulars, he can not remember at the distance of about twenty years. — Rogers was about to make a plat, but his ink had dried; the parties went together to the creek, leaving him, staid sometime, and when they returned they had agreed; followed the old line, by sight, to the three beeches, common corner on the northern boundary of the two surveys; ran and measured the distance on the line east from the three beeches — when the distance was out, Rogers quit the compass and *275 chain, advanced some steps farther, marked the two dogwoods and sugar tree or maple; thence ran a southwardly course to strike the other line of 1,750 acres, hut quit, before they reached it; marking, but not measuring on this south course.
Illustration of the manner the parties calculated in fixing and agreeing on the boundaries of the contract conveyed.
Farther illustration of the calculations, and motives in the transaction.
The surveyor’s report supplies the omitted distances to and from the intersections of Price, and the length of the lines of that survey, as far as they are within Rogers’ survey, and thereby, that interference appears to be upwards of 120 acres.
From the deed as executed, compared with the facts which are dear and uncontested, it may be demonstrated that, at the execution of the deed, the parties acted upon a belief and expectation of plus in the original surveys; and that the surplus which might fail'within the boundaries of the deed to Garnett, was conceded to him, in consideration of his agreeing to accept of boundaries which would have given him less than two thousand acres, if the original surveys did not hold out more than they called for.
Take the surveys as they appear on paper, and the deed made, and we have in the deed, a base of six hundred poles, with the leg of 548 poles to construct the rectangular parallelogram, according to the deed and the original surveys to which it alludes; which however, is to include the interference of Price. Complete the rectangular figure, of lines 600 poles, and of 548 poles respectively, and we have an area of two thousand and fifty-five acres— deduct Price’s interference of 120 acres, and we have 1,935 acres -only, sixty-five acres short of Gar-nett’s quantity. How did the parties expect this might be made up to Garnett? By an expected surplus talked of, and reasonably to be expected in these military surveys.
Again, the quantity intended to be given to Gar-nett of the 1,750 acres survey, is to be found by the line of 226 poles, as measured from the original corner, to the corner, two dogwoods and sugar tree, (at E -) then made for Garnett’s boundary, thence at right angles 600 poles, according to the original *276 surrey. This south line, if run through the 1,75'0 acres, at the distance, of 226 poles from the dividing line between the two surveys, would give to Garnett, according to the fare of the surveys, eight hundred and forty-seven acres — these a dried to the 1,206 2-3 acres, would give two thousand and fifty three and two thirds — deduct from this the interference of Price, (excluded by the deed, supposed then to be 100 acres or upwards.) and we have nineteen hundred and fifty-three and a third acres only; about forty-six acres short of Garnett’s quantity of 2,000 acres, calculating the interference at precisely 100 acres, and a greater deficiency if the true quantum of interference is deducted. How was this deficiency to be made up to Garnett? By the expected surplus in the military surveys.
Another view of the principles the parties acted on.
Again — take the statement of Garnett, that he a*' greed to loose half the interference of Price, in consideration that Rogers agreed to let him have the residue calculated upon the lines and qualify expressed in the surveys. Suppose, the parties acting on such an agreement, and about to lay off the land for Garnett, giving him choice of the 1,206 2-3 acres survey, but excluding the interference of Price, supposed to he 100 acres or a little more; then all their acts upon the ground, and the deed are explained, and consist with reason and good sense.
From 1,206 2-3, the quantity of the one survey, deduct half the interference of Price, and the quantity in that, survey remaining for Garnett was fixed; all mensuration on that survey became unnecessary, for the quantity after deducting the, interference, was to be given to Garnett, more or less. It (lien remained to calculate what quantity should he assigned him out of the other survey of 1,750 acres it) calculate the length of the line required upon a base of 600 poles, to give that quantity; to measure that line, and run and mark the division line, was the surveying required. So the. parties did. Deducting half the interference of Price, calculated at 100 acres precisely, and the quantity of eleven» hundred and fifty-six and two-thirds acres remain *277 ed in that far Garnett; which deducted from 2,000 acres, left eight hundred and forty-three acres and a third to be provided for Garnett, out of the 1,750 acres. To calculate this, they had a base of 600 poles given in the original surveys, and had only to calculate what length upon the other leg of the rectangle, would give that quantity. Upon calculation it required two hundred and twenty five poles; a few acres above 100 for Price’s interference, would have required 226 poles, called for in the deed — a few poles thrown in for good measure, makes it hold out on the ground, .according to the measure of the surveyor, in this cause.) 226 poles.
Evidence on the face of the debt that the sale was in gross by the abuttals; and not by the acre.
Where the parties upon the ground, with the implements and hands, decline a measurement, but adopt old lines, calculating on surplus, and the deed does not furnish the data for the quantity, but mentions it as description only, the sale shall not be taken as by the acre, but in gross.
*277 The deed appears, upon its face, to be by abuttals, and not by quantity. Quantify is used but by way of description. It does not wear the appearance of a deed intended to confine the party conveying to warrant, nor 10 permit the party accepting to insist on any specified number of acres. The data to calculate the precise quantify of acres in the area, circumscribed by the courses and abuttals, are not contained in the deed. The distances between the fourth, fifth, sixth and seventh abutals. are not expressed. Price’s interference is excluded, but the means of calculating the quantity of that interference and exception, are not given. It is a deed upon its face, by which the parties have agreed to a-bideby abuttals, regardless of what after experiments might prove the exact number of acres to be. The vendee could have no claim for a deficit, of acres, whilst the covenant to warrant and defend the boundaries is unbroken, neither can the vendor have claim for a surplus of acres. The principles of the decisions of Young vs Craig, 2 Bibb, 271; Fisher vs May’s heirs, 2 Bibb, 451; and Zimmerman ads Taylor, 2 Bibb, 453, seem to forbid the interference of a court of equity in this case.
The contract between these parties had remained executory from 1794, until the parties met upon the lands chosen in 1798, or 1799. The parties met there for the purpose of doing what was necessary to precede the change of this contract executory, into a contract executed. They were provided with *278 chain and compass, chain carriers and marker, and surveyor. Surplus was calculated upon as existing, but yet it was not ascertained. A confliction with Price's survey was talked of and known, but the quantum of that was not ascertained. But a single line of 206 poles was measured, a corner for division established, and the line of division run from it, and not measured, although marked. After this the parties respectively deliver and accept a deed, according to their acts done upon the lands, from which deed it can not. be calculated what quantity of acres is within the area. To make such a calculation, an actual survey would be necessary to ascertain distances not expressed in the deed. The parties might have done this when on the ground, they had all tilings necessary to do it, yet declined and substituted another mode of action instead of actual survey. Is it a fair inference from these acts, is it a fair interpretation of the deed, that the parties still meant to adhere to number of acres, that they left their contract as executory by the deed, as before they went upon the lands preparatory to the deed? That they meant nothing, have done nothing but leave, their contract as it was before the division was marked out? Did they forbear to resurvey the old lines to ascertain surplus, to ascertain Price's interference, with intent to make these experiments at a future day? Has that deed since its execution in 1800, left it to the election of either party to go on the ground, make an experiment, find out distances, try the quantity of acres, and as they should fall short, or exceed 2,000 acres, demand a redivision according to the contract of 1794? if it was the understanding of the parties, that the number of acres were to control the deed, why did the vendor forbear for eighteen years, to make the experiment?
Reference to the history of the Green river country, and settlement of its lands.
The parties have agreed the fact, that at the time of this division, that quarter of the country was unsettled. Our laws and the history of our government show, that between the contract in 1794, and the deed of 1800, settlements in that quarter were invited by offering the lands to settlers at for *279 ty cents per acre, and shortly after at twenty cents per acre. There was not, then, any great inducement to the parties to stickle about surplus, nor any great excitement to incur the trouble and expense of resurveying former surveys, for the purpose of accurate admeasurement and nice calculation of acres in this survey, which was unsettled, hilly and broken. But the progress of the settlements generally, and particular settlements on this tract, have enhanced the value of the surplus to two dollars fifty cents per acre, or three dollars, if taken along the division made at that day.
Remarks on the manner of the controversy.
Conclusion.
Crittenden for appellant; Mays for appellee.
The parties in this case appear to have acted as honest men, honestly differing as to the law of the case; neither misrepresenting, straining nor tortur-ing the facts. It would be well for the human family, and for the honor of the profession of the law, if all cases in courts of justice were conducted with like candor.
Upon the statements in the hi!!, the exhibits, deed, and proofs, we are satisfied that there has been no error or mistake upon which a court of equity ought to act. The only error which the complainant has committed, was in'not measuring the Sines when the parties met on the lands; the only mistake was, in agreeing to give Garnett the surplus in the survey on account of Price’s interference, or in his conjectural estimates of the surplus. We are satisfied,, that in making the division preparatory to the deed,both parties looked to a surplus in the original surveys, and acted upon that belief, neither party then knowing the extent of the surplus: that both parties waived admeasurement and accurate calculation of acres for mutual accommodation and ease, in adjusting the partition: and that the deed was executed in pursuance of, and in accordance with, such a modification of the contract of 1794. The deed bears internal evidence of it: all the acts of the parties on the ground accord with it.
The decree is affirmed with costs.